IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE VILLAGE OF SCHAUMBURG, an Illinois Municipal corporation, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 07-cv-6654 |
| ST. PAUL MERCURY INSURANCE COMPANY, a Minnesota corporation, ) ) ) ) | |
| Defendant. ) | |

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES
## TO PLAINTIFF'S COMPLAINT

Defendant, ST. PAUL MERCURY INSURANCE COMPANY ("St. Paul"), by and through its counsel, Karbal, Cohen, Economou, Silk & Dunne, LLC, for its Answer and Affirmative Defenses to Complaint of Plaintiff, THE VILLAGE OF SCHAUMBURG ("the Village"), states as follows:

### Introduction

1. The Village and one of its employees were named as defendants in a personal injury lawsuit filed by the Estate of Tiffany Slee and her parents, Julie and Michael Slee, (collectively the "Estate") in the Circuit Court of Cook County, Illinois on or about April 3, 2000. Tiffany Slee ("Tiffany") had died on April 4, 1999, at the age of seventeen, after she walked onto a heavily traveled road and was struck by an oncoming vehicle. In its lawsuit, the Estate alleged that Tiffany's death was a suicide and that certain clinical social workers employed by the Village contributed to Tiffany's death by providing inadequate counseling services to Tiffany.

**ANSWER:** St. Paul admits the existence of the lawsuit filed by the Estate of Tiffany Slee, Julie Slee and Michael Slee in the Circuit Court of Cook County, Illinois. Except as

255463_1.DOC

expressly admitted, St. Paul has insufficient information to either admit or deny the remaining allegations contained in Paragraph 1, and therefore, denies them.

2.     The Village tendered the defense of the lawsuit to its insurance carrier, St. Paul Mercury Insurance Company ("St. Paul"), but St. Paul denied coverage and refused to defend the Village and one of its employees.

**ANSWER:**   St. Paul admits that the Village tendered the defense of the Slee lawsuit to St. Paul.  Further responding, St. Paul admits responding to the Village's tender in letters which are writings and speak for themselves.  Except as expressly admitted, St. Paul denies the remaining allegations in Paragraph 2.

3.     St. Paul's denial of coverage and refusal to defend was in contravention of its obligations under the applicable insurance policies.  Although judgment in the Estate's lawsuit was ultimately entered in favor of the Village and its employee, the Village incurred substantial legal fees and costs in their defense.  Such fees and costs should have been borne by St. Paul.

**ANSWER:**   Paragraph 3 contains legal conclusions for which no answer is required and none is made.  To the extent an answer is required, St. Paul denies the allegations in Paragraph 3.

4.     In this action, the Village seeks damages for St. Paul's breach of its contract of insurance with the Village.

**ANSWER:**   Paragraph 4 contains legal conclusions for which no answer is required and none is made.  To the extent an answer is required, St. Paul denies the allegations in Paragraph 4.

**Jurisdiction and Venue**

5.     This Court has jurisdiction pursuant to the provisions of 28 U.S.C. § 1332, in that the dispute involves a controversy involving citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

**ANSWER:**   St. Paul has insufficient information to either admit or deny the remaining allegations contained in Paragraph 5, and therefore, denies them.

6. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) in that a substantial part of the events or omissions giving rise to the claim occurred within this district.

**ANSWER:** On information and belief, St. Paul admits the allegations contained in Paragraph 6.

### The Parties

7. The Village is an Illinois municipal corporation with its principal place of business in Schaumburg, Illinois.

**ANSWER:** On information and belief, St. Paul admits the allegations contained in Paragraph 7.

8. Defendant St. Paul is a Minnesota corporation with its principal place of business in or near Minneapolis, Minnesota. St. Paul sold several insurance policies to the Village for the period beginning October 1, 1998 through October 1, 2000.

**ANSWER:** St. Paul admits that it is a Minnesota corporation with its principal place of business in St. Paul, Minnesota. Further responding, St. Paul admits that it issued two insurance policies to the Village: (1) Policy No. GPO0300387 with a policy period of October 1, 1998 to October 1, 1999; and (2) Policy No. GPO9300703 with a policy period October 1, 1999 to October 1, 2000. Except as expressly admitted, St. Paul denies the remaining allegations contained in Paragraph 8.

### Factual Background

The St. Paul Policies

9. In 1998, prior to the expiration of the Village's insurance policies with its existing carrier, the Village issued a Request for Proposal ("RFP") expressly stating that it sought a duplication of the Village's current coverages. Under its then existing policies, the Village carried malpractice insurance for all of its counselors, including the clinical social workers employed by the Village's Family Counseling Center.

**ANSWER:**   St. Paul has insufficient information to either admit or deny the allegations contained in Paragraph 9, and therefore, denies them.

10.     The RFP further noted that the Village's insurance program would be awarded in total and that the Village did not intend to award its insurance contracts piecemeal.

**ANSWER:**   St. Paul has insufficient information to either admit or deny the allegations contained in Paragraph 10, and therefore, denies them.

11.     In response to the RFP, St. Paul submitted a quotation for a comprehensive insurance policy.

**ANSWER:**   St. Paul has insufficient information to either admit or deny the allegations contained in Paragraph 11, and therefore, denies them.

12.     Effective October 1, 1998, the Village purchased a comprehensive insurance policy, Policy No. GP03400387, from St. Paul for a term of one year.

**ANSWER:**   St. Paul admits the existence of Policy No. GP03400387 issued to the Village, with effective dates beginning October 1, 1998 and ending October 1, 1999, which is a writing and speaks for itself.  Other than expressly admitted, St. Paul denies the remaining allegations contained in Paragraph 12.

13.     Effective October 1, 1999, the Village renewed its policy with St. Paul under Policy No. GP09300703, for another one year term.  (Policy Nos. GP03400387 and GP09300703 are collectively referred to as the "St. Paul Policies.")

**ANSWER:**   St. Paul admits the existence of Policy No. GP09300703 issued to the Village with effective dates beginning October 1, 1999 and ending October 1, 2000, which is a writing and speaks for itself.  Other than expressly admitted, St. Paul denies the remaining allegations contained in Paragraph No. 13.

14.     The St. Paul Policies included Health Care Facility Medical Professional Liability Protection coverage, on a claims-made basis, with a $2,000,000 per person limit (the "Medical Professional Liability" coverage).  The Medical Professional Liability terms are attached hereto as Exhibit 1.

**ANSWER:** St. Paul admits the existence of the Health Care Facility Medical Professional Liability Protection Claims Made Coverage, which is a writing and speaks for itself.

15. The Medical Professional Liability coverage protected the Village and its employees against liability arising from "medical professional injury" resulting from "health care professional services."

**ANSWER:** Paragraph 15 contains legal conclusions for which no answer is required and none is made. To the extent an answer is required, St. Paul only admits the existence of the Health Care Facility Medical Professional Liability Protection Claims Made Coverage, which is a writing and speaks for itself. Except as expressly admitted, St. Paul denies the remaining allegations in Paragraph 15.

16. "Medical professional injury" and "health care professional services" were defined as follows:

> Medical profession injury means injury, including death, to others that results from health care professional services provided, or which should have been provided, by or for a protected personal.
>
> Health care professional services means only the following:. . . . mental or other similar health care professional services or treatments.

*See* Exhibit 1.

**ANSWER:** St. Paul admits the existence of the Health Care Facility Medical Professional Liability Protection Claims Made Coverage, which is a writing and speaks for itself. Further responding, the Health Care Facility Medical Professional Liability Coverage is subject to all of its respective terms, conditions, limitations, and exclusions. Except as expressly admitted, St. Paul denies the remaining allegations in Paragraph 16.

17. Pursuant to the terms of the Policies, St. Paul also had a duty to provide the Village and its employees with a defense on any lawsuit seeking to recover for any medical professional injury resulting from health care professional services. *See* Exhibit 1.

**ANSWER:** Paragraph 17 contains legal conclusions for which no answer is required and none is made. To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 17.

The Slee Lawsuit is Filed Against the Village and St. Paul Denies Coverage

18. The Village operates the Family Counseling Center, which employs licensed clinical social works and family and marriage counselors to provide affordable counseling services to Schaumburg residents. At all times relevant to this lawsuit, Larry Frank was employed by the Village as a counselor at the Family Counseling Center. Mr. Frank is licensed as a clinical social worker and as a marriage and family therapist with the State of Illinois.

**ANSWER:** St. Paul has insufficient information to either admit or deny the allegations contained in Paragraph 18, and therefore, denies them.

19. From time to time beginning in June 1995 through December 18, 1998, Mr. Frank, as part of his employment with the Village's Family Counseling Center, provided counseling services to Tiffany. Tiffany's last counseling session with Mr. Frank was on December 18, 1998.

**ANSWER:** St. Paul has insufficient information to either admit or deny the allegations contained in Paragraph 19, and therefore, denies them.

20. On April 3, 1999, Tiffany walked onto Golf Road in neighboring Hoffman Estates and was struck by an automobile. That collision occurred three-and-a-half months after her last counseling session with Frank. She died on April 4, 1999 as a result of injuries suffered in that collision.

**ANSWER:** St. Paul has insufficient information to either admit or deny the allegations contained in Paragraph 20, and therefore, denies them.

21. On April 3, 2000, Tiffany's Estate filed a personal injury lawsuit in the Law Division of the Circuit Court of Cook County captioned as *Estate of Tiffany M. Slee, Julie Slee and Michael Slee v. Suburban Medical Center at Hoffman Estates, Inc., et al.*, Case Number 00 L 3846 (the "Slee Lawsuit."). A true and correct copy of the Complaint filed in the Slee Lawsuit is attached as Exhibit 2.

**ANSWER:** St. Paul admits the existence of the Slee Lawsuit and the Complaint attached at Exhibit 2, which is a writing and speaks for itself. Except as expressly admitted, St. Paul denies the remaining allegations in Paragraph 21.

22. In the original complaint, plaintiffs named both the Village and Mr. Frank, alleging among other things that Tiffany's death was a suicide and that her injuries were caused by Mr. Frank's substandard counseling services provided to Tiffany during the period beginning October 17, 1996 to on or about November 25, 1998:

> The Village, acting through its duly authorized employee, Larry Frank, breached its duty to Tiffany . . . by rendering counseling to her which was deficient and did not meet the standard practice of counseling care for a counseling center which is rendering counseling care to a counselee with signs and symptoms of depression and suicidal behavior…"

*See* Exhibit 2.

**ANSWER:** St. Paul admits the existence of the Slee Lawsuit and the Complaint filed therein, which is a writing and speaks for itself. Other than expressly admitted herein, St. Paul denies the remaining allegations contained in Paragraph 22.

23. After receiving copies of the papers in the Slee Lawsuit, the Village immediately notified St. Paul, asking it to assume its duty to defend the Village and Mr. Frank.

**ANSWER:** St. Paul admits only that the Village ultimately requested a defense of the *Slee* Lawsuit. Except as expressly admitted, St. Paul denies the remaining allegations in Paragraph 23.

24. By letter dated June 20, 2000, which was received by the Village on June 22, 2000, St. Paul denied coverage under all of the St. Paul Policies. St. Paul specifically denied coverage under the Medical Professional Liability policy because it purportedly insured only the Village's EMTS facilities, and not the Family Counseling Center or the Village's social workers. St. Paul also refused to provide a defense. A copy of the denial letter is attached as Exhibit 3.

**ANSWER:** St. Paul admits only the existence of its correspondence attached to Plaintiff's Complaint at Exhibit 3, which is a writing and speaks for itself. Except as expressly admitted, St. Paul denies the remaining allegations in Paragraph 24.

25.     Contrary to the position taken in its June 20, 2000 letter, St. Paul had previously confirmed coverage under the St. Paul Policies for the Family Counseling Center and its employees. Specifically, on or about March 5, 1999, a clinical social worker from the Village's Family Counseling Center requested proof of malpractice insurance in order to participate in a continuing education class. St. Paul, through its authorized representative, provided proof of insurance for the social worker to the Village. Reasonably relying upon these representations by St. Paul, the Village did not purchase additional insurance to cover its social workers employed at the Family Counseling Center.

**ANSWER:**   St. Paul denies the allegations contained in Paragraph 25.

26.     In or about August 2003, the Estate filed a First Amended Complaint followed shortly by a Second Amended Complaint, in which they asserted additional claims of relief against the Village. These additional claims were based upon the alleged misconduct of certain "clerical, non-social worker employees in the Village of Schaumburg Police Department" and the Village's "police social workers." These "police social workers," like the social workers who worked in the Family Counseling Center, were all employees of the Village's Department of Health. A true and correct copy of the Second Amended Complaint is attached as Exhibit 4.

**ANSWER:**   St. Paul admits the existence of the First and Second Amended Complaints, each of which is a writing and speaks for itself. Other than expressly admitted, St. Paul has insufficient information to either admit or deny the remaining allegations contained in Paragraph 26, and therefore, denies them.

27.     In its Second Amended Complaint, the Estate continued to assert its original claims against the Village and Mr. Frank.

**ANSWER:**   St. Paul admits the existence of the Second Amended Complaint, which is a writing and speaks for itself.

28.     St. Paul agreed to defend the Village with respect to the new claims set forth in Counts XXV through XXX of the Second Amended Complaint under a complete reservation of St. Paul's rights pursuant to the Law Enforcement Liability coverage included in Policy GPO3400387. A true and correct copy of St. Paul's correspondence is attached as Exhibit 5.

**ANSWER:**   St. Paul admits that it agreed to provide a defense to the Village under a complete reservation of rights. Further responding, St. Paul admits the existence of its correspondence attached to the Complaint at Exhibit 5, which is a writing and speaks for itself.

Other than expressly admitted, St. Paul denies any remaining allegations contained in Paragraph 28.

29.　　St. Paul continued, however, to refuse to defend the Village and Mr. Frank against the original claims asserted against the Village and Mr. Frank.

**ANSWER**:　　St. Paul admits that it agreed to provide a defense to the Village under a complete reservation of rights. Further responding, St. Paul admits that it did not agree to provide a defense for Mr. Frank. Other than expressly admitted, St. Paul denies any remaining allegations contained in Paragraph 29.

30.　　As a result of St. Paul's refusal, the Village defended itself and Mr. Frank with respect to the original claims asserted against them in the Slee Lawsuit, incurring substantial expense in excess of $75,000.00.

**ANSWER**:　　St. Paul denies the allegations contained in Paragraph 30.

31.　　Judgment in the Slee Lawsuit was ultimately entered in favor of the Village and its employees.

**ANSWER**:　　On information and belief, St. Paul admits the allegations contained in Paragraph 31.

### Count I: Declaratory Judgment

32.　　The Village repeats and realleges the allegations of Paragraphs 1 through 31 as if fully set forth herein.

**ANSWER**:　　St. Paul repeats and restates its answers in Paragraphs 1 through 31 as if fully set forth herein.

33.　　The claims alleged against the Village and Mr. Frank were within the scope of coverage provided by the St. Paul Policies.

**ANSWER**:　　Paragraph 33 contains legal conclusions for which no answer is required and none is made. To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 33.

34. The St. Paul Policies contractually obligated St. Paul to defend the Village and Mr. Frank against the claims in the Slee Lawsuit.

**ANSWER:** Paragraph 34 contains legal conclusions for which no answer is required and none is made. To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 34.

35. Although the Village gave timely notice of the Slee Lawsuit to St. Paul, St. Paul refused to defend or provide coverage to the Village and Mr. Frank in the Slee Lawsuit.

**ANSWER:** Paragraph 35 contains legal conclusions for which no answer is required and none is made. To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 35.

36. St. Paul breached its contract with the Village.

**ANSWER:** Paragraph 36 contains legal conclusions for which no answer is required and none is made. To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 36.

37. This dispute presents a proper case for a declaratory judgment under 28 U.S.C. 2001, et seq, because:

> (a) the Court otherwise has jurisdiction over this matter;
> (b) the question of whether the St. Paul was obligated to defend and indemnify the Village and Mr. Frank with respect to the Slee Lawsuit is an actual controversy, given the parties' disagreement on that issue;
> (c) a prompt determination of coverage is important to the Village and to St. Paul;
> (d) no other action is underway that will determine the parties' rights under the St. Paul Policies; and
> (e) no principle of equity dictates against a declaration of the parties' rights.

**ANSWER:** Paragraph 37 contains legal conclusions for which no answer is required and none is made.

### Count II:  Breach of Contract

38. The Village repeats and realleges the allegations of Paragraphs 1 through 31 as though fully set forth herein.

**ANSWER:** St. Paul repeats and restates its answers in Paragraphs 1 through 31 as if fully set forth herein.

39. The St. Paul Policies contractually obligated St. Paul to defend and indemnify the Village and Mr. Frank against all of the claims in the Slee Lawsuit.

**ANSWER:** Paragraph 39 contains legal conclusions for which no answer is required and none is made.  To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 39.

40. The Village has fully performed its obligations under the St. Paul Policies.

**ANSWER:** Paragraph 40 contains legal conclusions for which no answer is required and none is made.  To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 40.

41. St. Paul breached its contract with the Village.

**ANSWER:** Paragraph 41 contains legal conclusions for which no answer is required and none is made.  To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 41.

42. As a direct and proximate cause of St. Paul's breach of its contract, the Village has incurred fees and costs in defending itself and Mr. Frank in the Slee Lawsuit in excess of $75,000, exclusive of interest and costs.

**ANSWER:** Paragraph 42 contains legal conclusions for which no answer is required and none is made.  To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 42.

## Count III: Bad Faith Denial of Coverage Under 215 ILCS 5/155

43. The Village repeats and realleges the allegations of Paragraph 1 through 31 as if fully set forth herein.

**ANSWER:** St. Paul repeats and restates its answers in Paragraphs 1 through 31 as if fully set forth herein.

44. St. Paul's refusal to provide a defense to the Village and Mr. Frank in the Slee Lawsuit was in direct contravention of its contractual obligations under the terms of the St. Paul Policies.

**ANSWER:** Paragraph 44 contains legal conclusions for which no answer is required and none is made. To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 44.

45. In addition, the Village reasonably relied on St. Paul's representations, made after the St. Paul Policies first went into effect, that coverage for its social workers and the Family Counseling Center existed under those policies.

**ANSWER:** Paragraph 45 contains legal conclusions for which no answer is required and none is made. To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 45.

46. St. Paul's refusal to provide a defense to the Village and Mr. Frank in the Slee Lawsuit was unreasonable and vexatious.

**ANSWER:** Paragraph 46 contains legal conclusions for which no answer is required and none is made. To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 46.

### **Count IV:  Estoppel**

47. The Village repeats and realleges the allegations of Paragraphs 1 through 31 as though fully set forth herein.

**ANSWER:**  St. Paul repeats and restates its answers in Paragraphs 1 through 31 as if fully set forth herein.

48. On or about March 5, 1999, in response to a specific request by the Village, St. Paul's authorized representative represented that the St. Paul Policies provided malpractice coverage to the Village and its social workers.

**ANSWER:**  Paragraph 48 contains legal conclusions for which no answer is required and none is made.  To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 48.

49. Had the Village been told that such coverage did not exist under the St. Paul Policies, it would have immediately sought and obtained such coverage, effective retroactively, for its social workers.  The Village, however, reasonably relied on those representations to its detriment in that it did not seek to obtain additional insurance coverage.

**ANSWER:**  Paragraph 49 contains legal conclusions for which no answer is required and none is made.  To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 49.

50. As a consequence of St. Paul's conduct as alleged above, St. Paul is estopped from denying coverage to the Village and Mr. Frank under the St. Paul Policies.

**ANSWER:**  Paragraph 50 contains legal conclusions for which no answer is required and none is made.  To the extent an answer is required, St. Paul denies the allegations contained in Paragraph 50.

## PRAYER FOR RELIEF

WHEREFORE, St. Paul Mercury Insurance Company prays for judgment:

(a)　　dismissing the Plaintiff's claims against St. Paul with prejudice;

(b)　　awarding St. Paul costs and attorneys' fees; and

(c)　　providing such other and further relief as the Court may deem appropriate.

## AFFIRMATIVE DEFENSES

Defendant, St. Paul Mercury Insurance Company ("St. Paul") asserts the following affirmative and other defenses to Plaintiff's Complaint:

### First Affirmative Defense

Plaintiff's claims are barred to the extent that there is no actual and justiciable controversy existing between the parties.

### Second Affirmative Defense

Plaintiff's claims are barred to the extent that the Complaint fails to state a cause of action or a claim upon which relief may be granted against St. Paul.

### Third Affirmative Defense

Some or all of Plaintiff's claims against St. Paul may be barred by virtue of the applicable statutes of limitations.

### Fourth Affirmative Defense

Some or all of Plaintiff's claims against St. Paul may be barred by virtue of the equitable doctrine of laches, waiver, res judicata, collateral estoppel, judicial estoppel and/or issue preclusion.

**Fifth Affirmative Defense**

Plaintiff's claims in whole or in part, are barred by virtue of the doctrines of ratification, accord, satisfaction and release.

**Sixth Affirmative Defense**

St. Paul has no obligation to contribute to or reimburse for the payment of defense costs associated with the Slee claims, based on the insuring agreements and certain terms, definitions, exclusions and conditions of the St. Paul Policies.

**Seventh Affirmative Defense**

St. Paul has no obligations to the extent that Slee's claimed injuries were caused by entities or individuals that do not qualify as insured(s) under the St. Paul Policies. The St. Paul Policies do not provide coverage for any entities or individuals other than the named insured and any other entities or individuals as specified in the St. Paul Policies.

**Eighth Affirmative Defense**

Plaintiff's claim for damages are barred or reduced to the extent that St. Paul provided for a defense of the Village, which also, on a *de facto* basis, included payment for defending the Village's employees.

**Ninth Affirmative Defense**

The Plaintiff's claims are barred to the extent that the complained of acts took place prior to any retrodates stated in the St. Paul Policies.

**Tenth Affirmative Defense**

The Plaintiff's claims are barred to the extent that any alleged bodily injury did not take place during the policy period of the St. Paul Policies.

### Eleventh Affirmative Defense

Plaintiff's claims are barred to the extent that any alleged bodily injury was not caused by or did not arise out of an "accident" or "occurrence."

### Twelfth Affirmative Defense

Plaintiff's claims are barred to the extent they fall within the exclusion for health care professional services, which is stated in one or more of the coverage parts of the St. Paul Policies.

### Thirteenth Affirmative Defense

Plaintiff's claims are barred to the extent they fall within the exclusion for law enforcement duties, which is stated in one or more of the coverage parts of the St. Paul Policies.

### Fourteenth Affirmative Defense

Plaintiff's claims are barred to the extent they fall within the exclusion for failure to obtain or maintain insurance, which is stated in the Public Entity Management Liability Protection Claims Made Coverage.

### Fifteenth Affirmative Defense

Plaintiff's claims are barred to the extent they fall within the exclusion for prior wrongful acts, which is stated in the Public Entity Management Liability Protection Claims Made Coverage.

### Sixteenth Affirmative Defense

Plaintiff's claims are barred under the Health Care Facility Medical Professional Liability Protection Claims Made Coverage because coverage under that part is limited to Emergency Medical Technicians ("EMTS").

### Seventeenth Affirmative Defense

Plaintiff's claims are barred under the injury or damage exclusion, which is stated in the Public Entity Management Liability Protection claims made coverage.

### Eighteenth Affirmative Defense

To the extent that the claimed injuries in the Slee Lawsuit were expected or intended from the standpoint of the Plaintiff, or were otherwise non-fortuitous, St. Paul has no obligation to defend the Plaintiff or to contribute to the payment of defense costs associated with the *Slee* case.

### Nineteenth Affirmative Defense

To the extent that Plaintiff failed to comply with all necessary conditions (whether precedent or subsequent), St. Paul owes no defense obligation to Plaintiff.

### Twentieth Affirmative Defense

To the extent that the acts, conditions, events and damages which form the basis of the underlying claim against the Plaintiff were known, in whole or in part, by any insured prior to the inception date of a St. Paul Policy or were already in progress, St. Paul has no obligation to defend or indemnify the Village or any insured or to contribute to the payment of defense costs associated with those claims.

### Twenty-First Affirmative Defense

To the extent the Plaintiff seeks coverage for any sums that an insured voluntarily assumed or incurred without the appropriate consent, such claims are barred.

### Twenty-Second Affirmative Defense

To the extent that the Plaintiff has failed to mitigate, minimize or avoid any damages sought in the *Slee* case, there is no coverage for amounts attributable to this failure.

### Twenty-Third Affirmative Defense

To the extent that the Plaintiff seeks defense for liability arising out of any of its actions or conduct in express disregard of any legal obligations under state, federal, or local laws and regulations, St. Paul has no obligation to defend Plaintiff.

### Twenty-Fourth Affirmative Defense

To the extent that any coverage is found to exist under either of the St. Paul Policies, any such coverage would be subject to any applicable self-insured retentions or deductibles.

### Twenty-Fifth Affirmative Defense

To the extent that other insurance is available to cover the loss otherwise covered by either of the St. Paul Policies, the "other insurance" clauses contained in the St. Paul Policies may limit St. Paul's contribution and/or allocation duties, if any.

### Twenty-Sixth Affirmative Defense

Plaintiff's claim is barred to the extent that any alleged insured has impaired St. Paul's subrogation rights, whether in whole or in part, which may exist under the St. Paul Policies.

### Twenty-Seventh Affirmative Defense

St. Paul reserves the right to assert additional defenses upon further discovery in this matter.

### PRAYER FOR RELIEF

WHEREFORE, St. Paul Mercury Insurance Company prays for judgment:

(a)     dismissing the Plaintiff's claims against St. Paul with prejudice;

(b)     awarding St. Paul costs and attorneys' fees; and

(c)     providing such other and further relief as the Court may deem appropriate.

Dated: February __, 2008

Respectfully submitted,

ST. PAUL MERCURY INSURANCE COMPANY

By: _____/s/Linda Carwile_____
          One of Its Attorneys

Rory T. Dunne
Linda J. Carwile
**KARBAL, COHEN, ECONOMOU,**
**SILK & DUNNE, LLC**
200 South Michigan Avenue, 20th Floor
Chicago, IL 60604
Tel:   (312) 431-3700
Fax:   (312) 431-3670
Firm ID No. 38100