UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE VILLAGE OF SCHAUMBURG, an Illinois Municipal corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 07 C 6654 Hon. Marvin E. Aspen |
| ST. PAUL MERCURY INSURANCE COMPANY, a Minnesota corporation, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER AND OPINION

MARVIN E. ASPEN, District Judge:

This dispute hinges on language in an insurance contract entered into between the parties. Plaintiff Village of Schaumburg ("the Village") contends that Defendant St. Paul Mercury Insurance Company ("St. Paul Mercury") breached its contractual duty to defend the Village and its employee in a state-court personal injury action. St. Paul Mercury denies these allegations. The parties have filed cross-motions for summary judgment, each seeking declaratory judgment concerning St. Paul Mercury's obligations under the pertinent contract. For the reasons discussed below, we grant St. Paul Mercury's Motion for Summary Judgment on Phase I Issues and deny the Village's Motion for Partial Summary Judgment.[1]

---

[1] On June 18, 2008, we granted the parties' joint motion to bifurcate discovery and ordered them to file the pending summary judgment motions on the threshold issue of St. Paul Mercury's duty to defend. (06/18/2008 Order, Dkt. No. 28.)

**SUMMARY OF FACTS**[2]

St. Paul Mercury issued the Village an insurance policy, numbered GP09300703, which was in effect from October 1, 1999 through October 1, 2000 ("the 1999 Policy"). (Village SOF ¶ 4.) Among other things, the 1999 Policy included a section entitled "Health Care Facility Medical Professional Liability Protection – Claims Made," providing insurance coverage for potential liability incurred by certain health care professionals ("Health Care Policy").[3] (*Id.* ¶ 5; St. Paul Mercury Resp. to Village SOF ¶ 5; *see also* St. Paul Mercury Am. SOF, Ex. B, Health Care Policy.)

The Health Care Policy provides that St. Paul Mercury has "the right and duty to defend any claim or suit for covered medical professional injury made or brought against any protected person." (St. Paul Mercury Am. SOF, Ex. B, Health Care Policy at 2.) St. Paul Mercury agreed to do "so even if any of the allegations of any such claim or suit are groundless, false or fraudulent." (*Id.*) The Health Care Policy defines "medical professional injury" as "injury, including death, to others that results from health care professional services provided, or which should have been provided, by or for a protected person." (*Id.* at 1.) "Health care professional services" include "mental or other similar health care professional services or treatments." (*Id.*)

Pursuant to the Health Care Policy, "protected person" refers to "any person or organization who qualifies as a protected person under the Who Is Protected Under This

---

[2] Unless otherwise noted, the facts described herein are undisputed and culled from the parties' Local Rule 56.1 statements of fact.

[3] We recognize that, according to St. Paul Mercury, the "Health Care Facility Medical Professional Liability Protection – Claims Made" is not itself a separate "policy" but merely a coverage part of the 1999 Policy. (St. Paul Mercury Resp. to Village SOF ¶ 5.) Nonetheless, we shall refer to this section as the "Health Care Policy" for simplicity's sake.

Agreement section." (*Id.*) That section then states that "[i]f you are named in the Coverage Summary and are a corporation or other organization, you are a protected person." (*Id.* at 4.) Furthermore, the "employees, students and volunteer workers" providing services for any such corporation or organization "are protected persons only for work done within the scope of their duties for you." (*Id.*) In this instance, the cover page of the Health Care Policy – the "Coverage Summary" – identifies the Village as the "protected person" in a section entitled "Who's Protected Under This Agreement." (*Id.*, Coverage Summary.[4])

The Coverage Summary includes additional language, however, that proves critical to this litigation. Specifically, the Coverage Summary – as revised and in its uncontroverted final form – contains a section entitled "Type of Facility," which appears just above the "Who's Protected Under This Agreement" section. (*Id.*) The "Type of Facility" section then provides the following notations: "EMTS,"[5] followed by the word "Nurses." (*Id.*) It is undisputed that the terms "Type of Facility," "EMTS" and "Nurses" are not defined in the Health Care Policy. The parties essentially contest the meaning of Health Care Policy, particularly the significance of the "Type of Facility" section.

This dispute over the proper interpretation of the Health Care Policy arose following the tragic death of a young woman who sought mental health care at the Village's Family Counseling Center. (St. Paul Mercury SOF ¶¶ 11-22; Village SOF ¶ 8.) According to the

---

[4] The Coverage Summary is a one-page document appearing at the beginning of the Health Care Policy. To avoid confusion, and because the Health Care Policy includes its own page numbering, we shall refer to the Coverage Summary independently without regard to page numbers.

[5] "EMTS" refers to emergency medical technicians.

underlying state-court complaint filed by her family, Tiffany Slee engaged in counseling sessions with Larry Frank, a social worker employed by the Village, from October 1996 through November 1998. (Village SOF ¶ 8.) In April 1999, Slee walked out into oncoming traffic, was struck by a car, and died the next day. (St. Paul Mercury SOF ¶¶ 11-13.) On April 3, 2000, plaintiffs in the underlying lawsuit filed their complaint against the Village, Frank and other defendants ("Slee Complaint"), alleging that Frank and the Village breached their duty to Slee because Frank rendered deficient counseling that resulted in her death.[6] (*Id.* ¶¶ 16-17.)

On approximately June 1, 2000, the Village notified St. Paul Mercury of the Slee Complaint. (*Id.* ¶ 27; Village SOF ¶ 10.) By letter dated June 20, 2000, St. Paul Mercury denied that it owed a duty to defend the Village under any pertinent coverage part of the 1999 Policy, including the Health Care Policy. (St. Paul Mercury SOF ¶¶ 28-30; Village SOF ¶ 12.) On July 31, 2000, the Village responded to St. Paul Mercury's disclaimer of coverage and requested reconsideration of the decision. (St. Paul Mercury SOF ¶ 31; Village SOF ¶ 14.) Nonetheless, St. Paul Mercury reiterated its denial, emphasizing that the Health Care Policy covered only EMT facilities and nurses and that the Village had never explicitly requested coverage for its social workers or other medical professional employees at the Family Counseling Center. (Village SOF ¶ 14; St. Paul Mercury Resp. to Village SOF ¶ 14; *see also* St. Paul Mercury SOF, Ex. G, 08/22/2000 Ltr.) The Village filed suit in this court on November 27, 2007, seeking a

---

[6] The Slee plaintiffs later amended their complaint to add causes of action against the Village, including allegations concerning the involvement of social workers at the Village's Health Department and Police Department. (St. Paul Mercury SOF ¶ 20.) St. Paul Mercury accepted defense of these additional claims under a reservation of rights, pursuant to the Law Enforcement Liability Coverage part of the 1999 Policy, but "continued to deny coverage for non-police related social worker services." (*Id.* ¶ 40.)

declaration that St. Paul Mercury had a duty to defend the Village and Frank and an award reimbursing the Village for the fees and expenses incurred in its successful defense of the Slee Complaint.

## STANDARD OF REVIEW

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). Once the moving party meets this burden of production, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather "must set forth specific facts showing that there is a genuine issue [of material fact] for trial." Fed. R. Civ. P. 56(e). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all reasonable inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

## ANALYSIS

Under Illinois law, which the parties agree governs this dispute, "the interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment." *BASF AG v. Great Am. Ins. Co.*, 522 F.3d 813, 818-19 (7th Cir. 2008); *see Rich v. Principal Life*

*Ins. Co.*, 226 Ill. 2d 359, 370-71, 875 N.E.2d 1082, 1089-90 (Ill. 2007); *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391, 620 N.E.2d 1073, 1077 (Ill. 1993). As the Illinois Supreme Court has stated:

> A court's primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the language of the policy. Like any contract, an insurance policy is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose.

*Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 223 Ill. 2d 352, 362, 860 N.E.2d 307, 314 (Ill. 2006) (internal citations omitted); *see Rich*, 226 Ill. 2d at 371, 875 N.E.2d at 1090; *Nicor, Inc. v. Assoc. Elec. & Gas Ins. Servs. Ltd.*, 223 Ill. 2d 407, 416, 860 N.E.2d 280, 286 (Ill. 2006); *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 108, 607 N.E.2d 1204, 1212 (Ill. 1993); *see also BASF AG*, 522 F.3d at 819; *First Ins. Funding Corp. v. Fed'l Ins. Co.*, 284 F.3d 799, 804-05 (7th Cir. 2002). In performing this task, the court must "tak[e] into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Nicor, Inc.*, 223 Ill. 2d at 416, 860 N.E.2d at 286; *see BASF AG*, 522 F.3d at 819; *Rich*, 226 Ill. 2d at 371, 875 N.E.2d at 1090; *Outboard Marine Corp.*, 154 Ill. 2d at 108, 607 N.E.2d at 1212.

"If the words used in the policy, given their plain and ordinary meaning, are unambiguous, they must be applied as written." *Valley Forge Ins. Co.*, 223 Ill. 2d at 363, 860 N.E.2d at 314; *see BASF AG*, 522 F.3d at 819; *First Ins. Funding Corp.*, 284 F.3d at 804; *Rich*, 226 Ill. 2d at 371, 875 N.E.2d at 1090. "Where ambiguity does exist, the policy will be construed strictly against the insurer, who drafted the policy, and liberally in favor of the coverage for the insured." *Nicor, Inc.*, 223 Ill. 2d at 417, 860 N.E.2d at 286 (internal citations omitted); *see BASF AG*, 522 F.3d at 819; *Rich*, 226 Ill. 2d at 371, 875 N.E.2d at 1090; *Valley*

*Forge Ins. Co.*, 223 Ill. 2d at 363, 860 N.E.2d at 314. Of course, the fact "[t]hat a term is not defined by the policy does not render it ambiguous, nor is a policy term considered ambiguous because the parties can suggest creative possibilities for its meaning." *Nicor, Inc.*, 223 Ill. 2d at 417, 860 N.E.2d at 286; *see Rich*, 226 Ill. 2d at 371, 875 N.E.2d at 1090 (stating that a contract term "is not rendered ambiguous merely because the parties disagree on its meaning"); *see also Valley Forge Ins. Co.*, 223 Ill. 2d at 363, 860 N.E.2d at 314. Indeed "ambiguity exists only if the term is susceptible to more than one reasonable interpretation," *Nicor, Inc.*, 223 Ill. 2d at 417, 860 N.E.2d at 286, and a court "will not search for ambiguity where there is none," *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391, 620 N.E.2d at 1078. *See also BASF AG*, 522 F.3d at 819; *Rich*, 226 Ill. 2d at 371-72, 875 N.E.2d at 1090; *Valley Forge Ins. Co.*, 223 Ill. 2d at 363, 860 N.E.2d at 314.

Here, both parties claim that the Health Care Policy is unambiguous and, moreover, that the plain meaning of its terms warrant judgment in their favor. (St. Paul Mercury Mem. at 11-14; Village Mem. at 8-10; *see also* Village Mem. at 8 ("This issue should begin and end with the language of the . . . 1999 Policy.").) St. Paul Mercury, for example, states that "[w]hen the plain language of the [Health Care Policy] is examined, there is no question that St. Paul has no duty to defend the . . . Slee Complaint seeking liability for social worker negligence." (St. Paul Mercury Mem. at 11.) In reaching this conclusion, St. Paul Mercury focuses on the "Type of Facility" portion of the Coverage Summary, which includes the words: "EMTS" and "Nurses" in its final form. (*Id.* at 1-2, 12.) St. Paul Mercury stresses that "[a]s is readily apparent, the Coverage Summary lists only 'EMTS' . . . under Type of Facility as the covered services." (*Id.* at 12.) It further explains that "[w]hile the Coverage Summary was revised in July 2000 to

reflect that nursing services were also covered, at no time was the [1999] Policy amended or modified to apply to the professional services of the Village's social workers or counselors." (*Id.*; *see also id.* at 1-2.) Thus, according to St. Paul Mercury, the Coverage Summary unambiguously extends coverage to only EMT and nursing services.

The Village, on the other hand, contends that St. Paul Mercury "cannot point to any language in the [Health Care Policy] that limits" coverage for its social workers. (Village Mem. at 8.) The Village relies on the definitions of the Health Care Policy, which provide that the Village, as a "protected person," and "its employees," are covered for claims for "medical professional injury . . . including death, . . . that result[] from health care professional services." (St. Paul Mercury Am. SOF, Ex. B, Health Care Policy at 1, 4 & Coverage Summary; *see* Village Mem. at 8-9.) The Village argues that St. Paul Mercury's reliance on the "Type of Facility" section in the Coverage Summary is misplaced, given that the terms "Type of Facility," "EMTS" and "nurses" are not defined anywhere in the pertinent documents. (Village Mem. at 8-10.) Although the Village challenges St. Paul Mercury's interpretation of the Health Care Policy and Coverage Summary, it does not offer an alternate interpretation. (*Id.*) Rather, it stresses that, under Illinois law, any ambiguity in the terms of the Coverage Summary must be resolved summarily in its favor. (*Id.* at 10-11.) In advancing these arguments, the Village has asked us essentially to ignore the "Type of Facility" section of the Coverage Summary, or to find that its terms are ambiguous and thus must be construed against St. Paul Mercury.

Having considered the parties' arguments, we conclude that under Illinois law, we are obligated to construe the Health Care Policy as a whole, including the Coverage Summary. *See Rich*, 226 Ill. 2d at 371, 875 N.E.2d at 1090; *Nicor, Inc.*, 223 Ill. 2d at 416, 860 N.E.2d at 286;

*Valley Forge Ins. Co., Inc.*, 223 Ill. 2d at 362, 860 N.E.2d at 314*; Outboard Marine Corp.*, 154 Ill. 2d at 108, 607 N.E.2d at 1212. Consistent with these authorities, we must assume – and, indeed, we find – that the Coverage Summary and the "Type of Facility" section exist to further the parties' intent. In fact, the Coverage Summary is the only part of the Health Care Policy that contains information specific to the parties and the parameters of the coverage, such as the name of the insured, limits of coverage and deductible amounts. (*See* St. Paul Mercury Am. SOF, Ex. B, Health Care Policy & Coverage Summary.) The remaining pages of the Health Care Policy include definitions and other important information, but these terms are entirely generic. (*Id.*) Under these circumstances, the Coverage Summary plainly exists to memorialize the extent of coverage provided by St. Paul Mercury under the Health Care Policy.

Turning to the "Type of Facility" section, we recognize that neither the term "Type of Facility," nor the notations "EMTS" and "Nurses," are defined in the Health Care Policy. (*Id.*, Coverage Summary.) Despite the Village's suggestion to the contrary, these terms cannot be deemed ambiguous solely because they are undefined. (Village Mem. at 9.) *See Rich*, 226 Ill. 2d at 371, 875 N.E.2d at 1090; *Nicor, Inc.*, 223 Ill. 2d at 417, 860 N.E.2d at 286; *Valley Forge Ins. Co.*, 223 Ill. 2d at 363, 860 N.E.2d at 314.

We further acknowledge that the Coverage Summary form may not perfectly suit the nature of this particular transaction. In fact, two of the subheadings on the form itself – "Type of Facility" and "Facility" – do not match up precisely with the information relevant to St. Paul Mercury's contract with the Village. For example, the Village is not a single "facility" but a municipality with many buildings and services. (*See* St. Paul Mercury Am. SOF, Ex. B, Coverage Summary.) And as the Village points out, EMTS and nurses are not "types of

facilities" but types of health care professionals. (*Id.*; *see also* Village Mem. at 10.) While the Village makes much of these incongruities, they are immaterial. Though the Coverage Summary form may not seem tailored specifically for this policy, it is not ambiguous either. The Village does not dispute, for example, that it is the insured under the Health Care Policy, although it is identified under the "Facility" subheading. (*See* St. Paul Mercury Am. SOF, Ex. B, Coverage Summary.)

When we read the terms of the Coverage Summary to be consistent with each other and the other provisions of the Health Care Policy, we find that the policy is unambiguous[7] and did not require St. Paul Mercury to defend the Village against the allegations of the Slee Complaint. If the "Type of Facility" section has any meaning at all – and it must, as discussed above – it serves to further define the scope of the coverage provided to the Village under the Health Care Policy. As St. Paul Mercury has argued, this section thus limits the coverage generally described in the Health Care Policy, such that coverage applies only to EMTS and nurses employed by the Village. We agree with this interpretation and further hold that the Health Care Policy is not susceptible to additional reasonable interpretations. Indeed, the Village has not even offered another explanation for the "Type of Facility" notations. (Village Mem. at 8-10.) Although theoretically we could try to concoct such alternatives, we need not and "will not search for ambiguity where there is none." *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391, 620 N.E.2d at 1078. Furthermore, if we adopted the Village's approach, the "Type of Facility" section would be rendered meaningless, and the parties cannot have intended such a result.

---

[7] Because we conclude that the Health Care Policy is unambiguous, we need not consider the parties' extrinsic evidence.

Accordingly, we conclude that the Health Care Policy provided liability protection for claims alleging medical professional injury inflicted by Village EMTS and nurses only. The parties do not dispute that Frank was a social worker employed at the Family Counseling Center and was neither an EMT, nor a nurse. The allegations of the Slee Complaint pertinent to this motion unequivocally do not concern the conduct of Village EMTS or nurses potentially covered by the Health Care Policy. *See Valley Forge Ins. Co.*, 223 Ill. 2d at 363, 860 N.E.2d at 314-15 (explaining that a court should compare the allegations of the underlying complaint to the terms of the insurance policy to decide whether the insurer has a duty to defend and that the duty arises "[i]f the facts alleged falls within, or potentially within, the policy's coverage"); *Outboard Marine Corp.*, 154 Ill. 2d at 107-08, 607 N.E.2d at 1212; *see also BASF AG*, 522 F.3d at 819. As a result, we find in favor of St. Paul Mercury.

**CONCLUSION**

For the reasons set forth above, we conclude that St. Paul Mercury had no duty under the Health Care Policy to defend the Village in connection with the Slee Complaint. We thus grant St. Paul Mercury's Motion for Summary Judgment on Phase I Issues (Dkt. No. 56) and deny the Village's Motion for Partial Summary Judgment (Dkt. No. 52). It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: March 23, 2009